Next, versus Mercy Hospital and Medical Center. Would the lawyers who have been arguing the case please introduce yourselves to the court, please. Good morning. My name is Chris Tedino. I represent Mercy Hospital and Medical Center. Good morning, your honors. Kate Schwartz. I represent the plaintiff appellee, Brian Less. Okay, and the appellate, do you want to reserve some time for rebuttal? Just two minutes, your honor. Okay, well, let's proceed. Good morning. Good morning. May it please the court. I'm here today to ask this court to vacate the trial court's overruling of our claims of privilege based upon the Medical Studies Act and the consultant privilege to post-occurrence reports authored based upon evaluations of the security systems at Mercy Hospital after a domestic violence event resulted in the deaths of three individuals plus the shooter himself at Mercy Hospital. In our briefs and as I present to the court today, we focus primarily on the actual language of the statute and the use of the disjunctive or in the statute itself, which talks about all information, interviews, reports, and then goes on to say or the medical staffs including patient care audit committees, medical care evaluation committees, utilization review committees, credential committees, and executive committees or their designees, but not the medical records pertaining to the patient used in the course of internal quality control. And that's the phrase that we are focusing our argument on with the phrase of or before it. The argument that we're essentially asking this court to take into account is the plain language of the statute. Now this statute is designed to reduce morbidity and improve patient care, correct? As part of its designation, sir, yes. And can you identify in either report which deals specifically with patient care or morbidity? I believe that the reports deal with patient care as well as visitor care based on the plain language of the statute because security applies to both. Well, I mean, what was in the report that talked about patient care or morbidity? Tell me what. The part of the report that applies to it based on the plain language of the statute talks about ways to make a hospital as safe as can be for patients and visitors. We believe that goes towards patient care. Well, whenever there is a report like this, you know, the trial judge makes an in-camera examination. And the court here made this in-camera examination. And they didn't find anything to do with patient care or morbidity. So where is it? Where in the report did it say that? I make the argument, Your Honor, that it's used in the course of internal quality control, that the plain language of the statute talks about the use in the course of internal quality control of these reports. And when you take into account security as it applies to a hospital, the only institutions in our society where individuals are responsible for the care of others and also responsible for the care of visitors, that security encompasses all of that, both patient care and visitor care. I believe that security goes right to that function, Your Honor. Is there any case that has previously found that security becomes an issue that's discoverable? I apologize, Your Honor. May you please repeat that? Sure. Sorry. It's bad acoustics in here. No, I'm old. Is there any case that you have that has found security protocols are discoverable? No. Okay. We believe that this is a case of first impression as the statute applies to it. Thank you. But we believe that, again, Your Honor, that the case law that we've cited does provide examples of ancillary services being found to be protected under the Medical Studies Act provided that an internal committee approves it and says it's for use of internal quality control, which was done here, and it's not in dispute. We've cited those briefs, excuse me, we've cited those cases in our briefs that talk about an environmental services committee, that talk about third-party reports from the joint commission. And I will also add in support of our argument that Mercy Hospital and Medical Center is an accredited hospital licensed in the state of Illinois. And in order for it to be accredited, okay, the accreditation agencies take into account the emergency preparedness plan and the security plan that goes with it. The IDPH also takes into account a security plan and the procedures that go with it. Those two things are part of being licensed and accredited. Therefore, they have to go to patient care. And they are contemplated by the plan language of the statute. I also would like to focus just a little bit on the consultant privilege, because that's the other privilege that we're asserting for this, Your Honor. The consultant privilege in this particular case pertains to the report of one of the individuals, Mr. Sacco, who I retained as a consultant as part of the litigation. That also is not in dispute per se. The report that we're here to talk about is the report that was authored at the behest of the committee. And I understand the plaintiff's arguments that while he wasn't retained when he authored that report for litigation, he didn't meet with me and anticipate of authoring the report, and that his retention was before I actually retained him by one day. But I would cite to you the criminal case of People v. Coyne that we cited, which talks about an individual who was appointed by the court to do an examination of an individual accused of a sex crime. The lawyer that represented the defendant in that case subsequently retained him as a consultant. And the appellate court found that his report preceding the retention was privileged under the consultant privilege, under 201B3. So the timing was similar to this case. The fact that he wasn't retained for litigation is similar to this case. And the lawyer never spoke to him at the time he did that examination and issued that report. So all of those factors in the analysis of applying the consultant privilege are in favor of it being applied here. With that in mind, Your Honor, I will give my opponent an opportunity to say things, and then I'll be back for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. Again, my name is Kate Schwartz. I represent the Plaintiff Appellee Brian Less individually, and as the independent administrator of the estate of his deceased daughter, Dana Less. The consolidated appeals before you are a part of Defendant Mercy's years-long effort to ensure that the plaintiff is prevent Plaintiff Less from seeing the only documents in existence that assess security deficiencies at Mercy Hospital during the shootings in which Mr. Less's daughter was murdered as she was leaving work in November of 2018. Mercy claims the investigative reports at issue are privileged under the Illinois Medical Studies Act, and as to one of the reports under Rule 201B3. Mercy is also newly claiming on appeal that the reports are inadmissible and should be shielded from discovery on that basis. All of these arguments are meritless. Mercy's first claim that the Sacro and Carmen reports are privileged under the Medical Studies Act is wrong because of a simple, uncontested fact. These reports have absolutely nothing to do with patient medical care. The reports evaluate building security at the time of an active shooter event at Mercy during which no patient was harmed, and they contain the same type of information that would be gathered by any entity held open to the public after such a massive security breach, be it a shopping mall or a courthouse. Reports evaluating security at those types of entities would obviously be discoverable, and the mere fact that these reports happen to evaluate building security at a hospital as opposed to some other type of business doesn't shroud them with protection under the Medical Studies Act. Binding Illinois precedent is clear that the scope of the Medical Studies Act is narrow, and that its purpose is not to shield hospitals from liability, but rather to enable effective self-evaluation by members of the medical profession, as well as to improve the quality of health care. Can I ask a question? So their argument seems to be that you have to look at the entire statute, and the use of the word or creates subsections or parts that are not connected to each other. What's your argument with regards to that? Your Honor, I think the number of cases that speak to the purpose of the act clearly refutes their reading of the statute. They are bogged down on focusing in on one phrase of the plain language, used for quality control. They completely ignore what comes after. Used for quality control for the purpose of reducing morbidity or mortality, which is a medical term of ours talking about outcomes in health care, for the purpose of reducing morbidity or mortality or patient care. And to the extent that there's any question about the plain language, this court can look to precedent from the First District in John Julio, from the Illinois Supreme Court in Jenkins and Roach. All of these cases talk about the clear purpose of the statute, which is to improve the quality of patient health care at its core. And so Mercy's reading of the plain language simply cannot comport with that, and they can't cite a single case that shows that it should be interpreted as broadly as they claim. They construe the act so broadly that it protects every quality control report, even if the report has nothing to do with health care, patient health care, or health care professionals, which are the well-recognized purposes for which this statute was passed. So their interpretation doesn't comport with the purpose recognized by all of these cases, and it flies in the face of the rule requiring all evidentiary privileges to be construed as narrowly as possible, because of the fact that barring discovery goes against the truth-seeking purpose of discovery. And given the narrow scope and purpose of the Medical Studies Act, it's not surprising, as Your Honor recognized, that no court has ever held the act to be applicable to materials like these reports that are completely unrelated to patient care. If the act were truly as broad as Mercy claims, one would expect that at least one court would have applied it to materials analogous to these reports at some point in the more than four decades since this law was enacted. But no such precedent exists. Mercy is urging this court to be the very first one to shield documents wholly unrelated to patient care from a plaintiff whose lawsuit, likewise, has absolutely nothing to do with patient care, and it's urging this course of action under the guise that this case presents an issue of first impression. That is demonstrably false, Your Honors. The appellate court's ruling in Duncan is directly on point. In Duncan, the court rejected a hospital's Medical Studies Act privilege claim over incident reports sought by a hospital visitor in his slip-and-fall negligence case. All of the applicable details of Duncan align with the facts of this case. The plaintiff's negligence action in Duncan did not sound in medical malpractice. The same is true here. The injury at issue in the Duncan case was not sustained by a patient. The same is true here. And the hospital's claim in Duncan that the Medical Studies Act privilege applied was merely based on the fact that the reported issue was used for internal quality control to improve hospital conditions. That's exactly Mercy's claim here. The Duncan court held that the Medical Studies Act was inapplicable to those reports because they had nothing to do with patient medical care, and they were therefore beyond the scope of the legislature's intent in enacting the statute. The Medical Studies Act is inapplicable to the Carmen and Sacco reports for exactly the same reason. So Mercy cannot satisfy its burden of establishing this privilege, and the lower court correctly rejected Mercy's claim. Mercy's claim that the Sacco report is protected by the litigation consultant privilege under Rule 201B3 fares no better than its Medical Studies Act claim. It's undisputed that Mr. Sacco worked for Mercy in two distinct roles. First, the hospital's Quality and Safety Committee hired Mr. Sacco to report to it on the potential need for hospital security improvements. And one day later, Mercy's legal counsel retained Mr. Sacco as a consultant for anticipated litigation. I want to be very clear, since Mercy confuses this in its briefs, Plaintiff's List doesn't contest the validity of Mr. Sacco's subsequent retention by legal counsel. The only question is which of Mr. Sacco's two distinct roles he was working pursuant to when he created the investigative reported issue. That question is very easy to answer. Mr. Sacco prepared his report pursuant to his original retention by the hospital's Quality and Safety Committee. The trial court made that factual finding below, and every fact from the affidavit of Lisa Vidovic supports that conclusion. Paragraphs 8 and 9 of Ms. Vidovic's affidavit establish that Mr. Sacco prepared his report at the direction of the hospital's Quality and Safety Committee, that he prepared it to serve the hospital's business purpose of potentially improving security on the hospital's premises, and that Mr. Sacco provided the report to members of the hospital committee when it was completed. In rejecting Mercy's Rule 201B3 claim, the trial court relied on all of those facts from Ms. Vidovic's affidavit as well as the contents of the Sacco report itself, which the court reviewed in camera, and which apparently doesn't give any indication that the report was prepared for counsel for purposes of anticipated litigation. To the extent that Mercy is trying to claim that the mere fact of Mr. Sacco's retention as a litigation consultant automatically protects his report as litigation consultant work product, that's obviously incorrect. Rule 201B3 defines a consultant as a person retained to do work for litigation or trial. So when Mr. Sacco was doing work not for purposes of litigation or trial, he wasn't a consultant within the meaning of the rule. And we cited numerous cases dealing with experts who served dual roles, and those cases uniformly show that the dispositive question is whether the work product was prepared for purposes of litigation. Since Mr. Sacco's report wasn't, Mercy has no basis under Rule 201B3 to withhold the report. Mr. Didino did not address their admissibility argument either here or in reply. So with that, I will just say that the argument that the Carmen and Sacco reports are purportedly inadmissible and should not be discoverable for that basis, that argument has been waived. It's been raised for the first time on appeal. And even if Mercy could show that these reports were inadmissible, which they have not shown, that it wouldn't make a difference because the admissibility of evidence doesn't determine whether evidence is discoverable in the first instance. Ultimately, Your Honors, in closing, let me just say the investigations  directly relevant to this case and highly probative of Mercy's alleged negligence. The details of those investigations will undoubtedly further the truth-seeking purpose of discovery, and Mercy has been unjustifiably withholding those reports, leaving Mr. Lass's, Dana Lass's parents for years to agonize over questions about what happened in those critical minutes when Mercy's security response could have saved their daughter's life. Since Mercy has not satisfied its burden of establishing that any privilege applies to these reports, Plaintiff Lass respectfully asks this court to affirm the trial court's rulings ordering Mercy to produce the Sacco and Carmen reports. Thank you. Thank you very much. Let's hear the rebuttal. Your Honor, in rebuttal, I would just highlight a couple of items. The plaintiff has made the argument repeatedly that no patient was harmed here, therefore the act must not apply. That seems to be an illogical extension of the argument because if a patient had been harmed here, does that mean the act would apply? In other words, just because the shooter didn't happen to come upon a patient during his spree, does that mean that patient safety or visitor safety shouldn't be considered by the act? As far as whether or not there is no precedent for this, the unfortunate reality is that as a 56-year-old man, I can stand before you and tell you that the world has changed in a way that provides us with information that domestic violence actions like this are now coming to the workplace. And the only reason that this hasn't been decided by a court before is because of the unfortunate reality that that is now occurring. The absence of prior law doesn't mean that the plain act of the statute doesn't protect these reports. The protection of these reports will allow hospitals to conduct evaluations of things like security services so that they can improve exactly what the act is designed to improve, safety for visitors and patients. Do we need to wait for a patient to be killed to apply the act? I don't believe so. And I don't believe that the plain language of the act says that. Finally, I would address the Duncan case. The Duncan case is a first district case, but its application to this case is not applicable to this case. And the reason it's not applicable to this case is because it involves an incident report regarding a slip and fall. That was authored outside of the committee process. The incident report was not authorized by a committee and was not used in the course of internal quality control as blessed by a committee. In this case, the quality and safety committee at Mercy Hospital met and decided to retain the third party security consultants in this case, about whom the privileges are claimed. Therefore, the Duncan case is inapplicable. Again, Your Honor, we thank you for your time this morning, your questions, your interest. And we ask that you vacate the orders requiring us turning these over and dismissing and overruling our claims of privilege to these reports. Thank you very much. Thank you. Thank both of you for very good arguments and very good briefs, and we'll have a decision shortly.